Greg BERRY, Appellee,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellant.

Greg BERRY, Appellant,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.

Nos. 88–2204, 88–2268.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1989.

Decided May 9, 1989.

Olan W. Reeves, Asst. Atty. Gen., Little Rock, Ark., for appellant.

Gregory T. Jones, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

■ Greg Berry was convicted of kidnapping and attempted rape after a jury trial at which he represented himself. On a magistrate's[1] recommendation, the District Court[2] granted Berry habeas relief on the ground that Berry did not knowingly and intelligently waive his right to counsel. Because we agree with the District Court that Berry did not validly waive his right to counsel, we affirm.[3]

## I.

Attorney Michael Friedman was appointed to represent Berry on charges of kidnapping and attempted rape. However, another lawyer in Friedman's firm, James Hooper, actually handled the case. Hooper met with Berry on three or four occasions for 20 to 25 minutes. Only one of these meetings, the final one on November 25, 1981, the Wednesday before Thanksgiving, took place out of the presence of police officers or prison guards.

At that meeting, Hooper told Berry that the trial would take place on the coming Monday. Berry was surprised that the trial would take place so soon, since he thought the case had been taken off the trial schedule until he returned from the State Hospital. Berry testified that his lawyer had previously told him the case was not yet scheduled.[4] Hooper and Berry also discussed possible defenses. Berry reiterated what he had told his lawyer at their first meeting, that he did not commit the crimes, and that there were several witnesses who could testify to his whereabouts. When Hooper told Berry that he had not attempted to contact these witnesses, Berry became angry and expressed dissatisfaction with the lawyer's handling of the case. Over the Thanksgiving holiday, Berry tried to contact the witnesses himself from a jail pay phone, but was unsuccessful.

On the morning of trial, Berry and his lawyer had another heated dispute. Hooper told the Court about their disagreements and asked the judge to determine whether Berry wanted to continue to use his services or to proceed pro se. Berry told the Court why he was unhappy with Hooper's representation of him, explaining that they had met only a few times, that the trial date had come as a surprise to him, and that Hooper had failed to contact any alibi witnesses. At that point, the Court recessed to allow Berry to try to contact one of the witnesses by phone. The witness was located, but could not confirm that he knew of Berry's where-

---

1. The Hon. Henry L. Jones, Jr., United States Magistrate for the Eastern District of Arkansas.

2. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

3. After oral argument, Berry filed a Suggestion of Mootness. The District Court's order granting relief provided that Berry would have to be released from State custody if the State did not re-try him within 90 days. The Court then granted the State's motion that Berry's release be stayed pending appeal. The order granting the stay was signed on the 90th day after the order granting relief, but not entered on the docket until the 91st day. Berry claims the order granting relief therefore became irrevocably effective, thus mooting this appeal. We reject this argument.

4. Berry had just returned to the jail after a 30-day stay in the State Hospital for a psychiatric evaluation. He had not been in contact with his lawyer during that time. The evaluation was a result of Berry's claim that a doctor in California had diagnosed him as having a mental illness. Berry suggested this could be the basis for an insanity defense at trial.

abouts at the time the crimes were committed.

The Court came back into session, and the judge asked Berry whether he wanted "the continued services of Mr. Hooper." Tr. 121. Berry asked if he could retain his own attorney. *Id.* The judge replied that "[t]his matter has been set. We're going to trial." The judge then told Berry that his affidavit of indigency indicated that he could not afford to retain an attorney. *Id.* Berry continued to ask for another lawyer when repeatedly asked by the Court whether he "desired the services of Hooper." When asked whether he wanted to proceed pro se, Berry replied that "he was not qualified to represent himself." *Id.* at 123. Stating that he could not get an answer from Berry, the judge told Hooper to act as stand-by counsel and to aid Berry if he asked for help. *Id.* Berry then handed the judge a written motion for dismissal of attorney, and Hooper gave Berry the file on his case.

Berry handled his own defense, participating in jury selection, making opening and closing statements, and cross-examining the State's witnesses. He made several evidentiary objections, which were overruled. At no time did Berry consult with Hooper. The jury convicted Berry of kidnapping and attempted rape and sentenced him to 90 years in prison.

After exhausting his state remedies, Berry brought this action, alleging, among other things, that he did not validly waive his right to counsel at trial. The District Court ruled that Berry's waiver, though voluntary, was not knowingly and intelligently made. This appeal followed.[5]

## II.

To forego the assistance of an attorney, the accused must make a voluntary, knowing, and intelligent waiver of his right to counsel. *Wiggins v. Procunier,* 753 F.2d 1318, 1320 (5th Cir.1985). The defendant must have been made aware of "the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (citation omitted). The Supreme Court has taken a pragmatic approach in determining whether a waiver was knowingly and intelligently made:

> [Courts should] ask[ ] what purposes a lawyer [could] serve at the particular stage of the proceedings in question, and what assistance he would provide to an accused at that stage [in] determin[ing] the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized.

*Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 2397–98, 101 L.Ed.2d 261 (1988). While we prefer that the defendant be given "a specific on the record warning of the dangers and disadvantages of self-representation," we have not required such a warning. *Meyer v. Sargent,* 854 F.2d 1110, 1115 (8th Cir.1988). The record as a whole must be reviewed for circumstances indicating a knowing and intelligent waiver of the right to counsel. See *id.* at 1114.

The State argues that the District Court erred in concluding, on the basis of the record as a whole in this case, that Berry did not knowingly and intelligently waive his right to counsel. The State points out that Berry was fairly well educated, having obtained his GED and accumulated some college credits, and that Berry also had extensive experience with the criminal justice system due to his many prior convictions and his tenure as a law clerk in a

---

**5.** The State appeals the District Court's ruling on the waiver issue, and Berry cross-appeals, arguing that he was subjected to double jeopardy for a single offense and that he received ineffective assistance of counsel. We have considered Berry's claims, and conclude that the magistrate's recommendation fully and completely answers his arguments on the double-jeopardy question. We also agree with the District Court that the ineffective-assistance-of-counsel argument, in the circumstances of this case, is largely a replay of the argument that Berry did not effectively waive counsel. It does not need to be separately addressed.

prison law library.[6] The State claims that Berry handled his defense well, using peremptory challenges during voir dire and making specific evidentiary objections at trial. The State concludes that Berry's attempt to dismiss Hooper was merely the latest in a series of stalling attempts by the defendant.

We do not find the State's interpretation of the record persuasive. Essentially the State argues that because Berry did an arguably reasonable job handling his own case, there was no harm in his proceeding pro se, regardless of the validity of the waiver. This is not the standard by which we view deprivations of the right to counsel. *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). There is no dispute that the Court did not advise Berry of the perils of proceeding pro se. Nor is there any evidence on the record that the Court looked into Berry's knowledge of criminal justice procedures. *Cf. Meyer, supra* at 1114–15. That Berry had taken some college courses or had prior convictions is not enough to show he understood the dangers of self-representation at trial. "[E]ven the most gifted layman" requires the help of counsel to "adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross-examine witnesses effectively, ... object to improper prosecution questions, and much more." *Patterson v. Illinois, supra*, 108 S.Ct. at 2398 n. 13. Berry never agreed to proceed on his own behalf. He steadfastly asked for counsel. Outright denial of counsel cannot be harmless error.

Of course, this is not to say that every time a defendant requests a new lawyer, he should be indulged. These requests will sometimes, perhaps often, be dilatory tactics. A defendant has no right to manipulate his right to counsel in order to delay or disrupt the trial. *United States v. White,*

529 F.2d 1390, 1393 (8th Cir.1976). The focus of our inquiry here, however, is only on the validity of this defendant's waiver of his right to counsel. His difficulties with Mr. Hooper were not so obviously his own fault, or so transparently an effort to delay the trial, as to justify us in holding that the whole thing was a ploy by Berry to gain time. If the trial court had carefully examined Berry's problems with Hooper and found them clearly insubstantial, it might have been justified in forcing Berry to trial without a lawyer. That did not happen here.[7]

The judgment of the District Court is affirmed.

---

6. The State has moved to supplement the record to add some factual material about Berry's experience with the criminal justice system. We share Berry's misgivings about the propriety of this attempt to inject new evidence into the record on appeal. But this new evidence, even if considered, would not change our view that the District Court correctly decided this case. We therefore deem it unnecessary to rule specifically on the motion to supplement the record.

7. We appreciate the services of Berry's appointed counsel in this Court. He has done his customarily good job.