**James C. YOUNG, Appellee,**

v.

**A.L. LOCKHART, Director, Appellant.**

**No. 88–2625.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1989.

Decided Dec. 29, 1989.

William F. Knight, Asst. Atty. Gen., Little Rock, Ark., for appellant.

John Wesley Hall, Jr., Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

BRIGHT, Senior Circuit Judge.

A.L. Lockhart, Director of the Arkansas Department of Corrections, appeals the district court's order granting resentencing on *ex post facto* grounds to habeas corpus petitioner James C. Young. Young cross appeals the district court's denial of his other habeas corpus claims, including involuntary waiver of counsel and double jeopardy. For the reasons set forth below, we affirm in part and reverse in part, directing that the writ of habeas corpus issue unless Young is afforded a new trial by the State of Arkansas.

## I. BACKGROUND

On November 15, 1982, the State of Arkansas charged Young with two rapes, one which occurred on November 11, 1982, and the other on June 3, 1979. The State initially prosecuted and convicted Young for the 1982 rape. The subsequent prosecution of Young for the 1979 rape provides the subject of this appeal.

The State charged Young with class Y felony rape for the 1979 offense. Rape did not become a class Y felony in Arkansas, however, until 1981. Arkansas law in 1979 categorized rape as a class A felony. On July 15, 1983, four days before the scheduled start of the trial for the 1979 rape, Young filed a motion requesting that he be declared co-counsel and that a substitute be appointed in place of appointed counsel Horace Fikes, who had served as appointed counsel at Young's first trial. The court rejected this motion and gave Young the choice of either accepting Fikes as counsel or proceeding pro se. Young chose to represent himself pro se and the court rescheduled the trial.

Young filed a pretrial motion for dismissal of the charge, arguing that he was prejudiced by the preindictment delay of more than three years, that the victim never identified him and that he had been charged with a class Y felony, even though rape had been a class A felony in 1979.

The trial court overruled the motion as to preindictment delay and rejected the identification challenge, but did not address Young's contention that he had been charged under the wrong statute.

Young represented himself at trial, which took place in September of 1983. After deliberating for several hours, the jury reported that it was deadlocked ten to two and the trial court declared a mistrial. Affidavits later submitted by the jurors indicated that they had deliberated for between two and four hours, that ten jurors favored acquittal and that the split was made known to the judge and prosecuting attorney.

Young represented himself again at the second trial, held in March of 1984. This time the jury convicted Young and he received a fourteen year prison sentence. The Arkansas Court of Appeals affirmed the conviction, *Young v. State,* 14 Ark.App. 122, 685 S.W.2d 823 (1985), and the Arkansas Supreme Court denied Young's petition for post-conviction relief, *Young v. State,* 287 Ark. 361, 699 S.W.2d 398 (1985).

In January of 1989, Young filed the instant habeas corpus petition. After appointment of counsel, Young amended his petition, asserting seven claims arising from his conviction for the 1979 rape, only five of which are before this court on appeal: 1) involuntary waiver of counsel; 2) prejudicial preindictment delay; 3) double jeopardy; 4) violation of the *ex post facto* clause; and 5) denial of counsel at sentencing. The magistrate held a hearing, made proposed findings and recommended that sentencing relief be granted on Young's *ex post facto* claim. The magistrate found that Young had been ineligible for probation or a suspended sentence as a class Y felon and that these options would have been available had he been sentenced as a class A felon. The magistrate recommended that all of Young's other claims be denied.

In his objections to the magistrate's report, Lockhart for the first time asserted that Young's *ex post facto* claim was procedurally barred because the specific argument raised by Young had never been raised before the state courts. Lockhart also asserted that an Arkansas statute in effect in 1979, Ark.Stat.Ann. § 41–1201(1) (Repl.1977) (now codified at Ark.Code Ann. § 5–4–301(a)(1) (1987)), prohibited probation or suspended sentences for those convicted of first-degree rape, and that this prohibition applied to Young, notwithstanding that the State did not charge Young with first-degree rape.

The district court remanded the case to the magistrate with instructions to address the statutory issue raised by Lockhart. In his second proposed findings, the magistrate determined that the section 1201(1) prohibition against probation or suspended sentences for first-degree rape did not apply to Young because degrees of rape had been eliminated by the Arkansas legislature in 1976. Both parties filed objections to this report. The district court adopted the magistrate's findings and recommendations and ruled that the writ of habeas corpus would issue unless the state trial court resentenced Young within 120 days with Young represented by appointed counsel. Both parties appealed. Additional facts will be set forth below, as necessary.

## II. DISCUSSION

### A. Waiver of Counsel

◼ We first address the waiver of counsel issue. Young argues that the district court erred in holding that he voluntarily, knowingly and intelligently waived his right to counsel at trial. Young contends that the trial court did not attempt to determine whether he was competent to represent himself, did not caution him that he was waiving a basic constitutional right and did not advise him of the hazards of self-representation,[1] all in violation of the

---

1. The trial court first questioned Young about his reasons for moving for substitute counsel. In particular, the court asked Young why he waited so long to tell appointed counsel Fikes that he wished his defense to be alibi/misidenti-

fication and that he had a list of alibi witnesses. The following colloquy then took place:

    COURT: Mr. Young, you are going to be given the option today of either going to trial

Supreme Court's ruling in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

In *Faretta*, the Supreme Court stated:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S., [458] at 464–465 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)]. *Cf. Von Moltke v. Gillies*, 332 U.S. 708, 723–724 [68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S., [269] at 279 [63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)].

*Id.* 422 U.S. at 835, 95 S.Ct. at 2541.

This court outlined the principles governing waiver of counsel in *Meyer v. Sargent*, 854 F.2d 1110 (8th Cir.1988). In all waiver of counsel cases we ask "what purposes a lawyer can serve at the particular stage of the proceeding in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Meyer*, 854 F.2d at 1114 (quoting *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988)). In making this determination we look at the particular facts of each case, "including the background, experience, and conduct of the accused." *Id.* (quoting *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981)). Moreover, "a specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources." *Id.*

In *Meyer*, the defendant moved for substitute counsel midway through trial, thereby intending to obstruct the trial process. The trial court required Meyer either to proceed with appointed counsel or to represent himself pro se. Meyer chose self-representation. After conviction and appeal, Meyer filed a habeas corpus petition asserting that he did not waive counsel knowingly and intelligently because the trial judge did not warn him of the dangers of self-representation. This court held that the record as a whole demonstrated that the waiver occurred knowingly and intelligently, largely because of Meyer's obstructive

---

with Mr. Fikes, or the Court will relieve Mr. Fikes and you can represent yourself.

MR. YOUNG: Does the Court recognize that that is illegal in a case of this effect? I cannot stand before—I can stand before—I realize it is pro se—or co-counsel on later things, but to stand before a Class Y Felony—the only thing that I am asking the Court to do— I am not asking that they—well, I would like to see this case dismissed because I do believe that—I do believe that it is very unfair. I mean, it would be a pretty sad—is all this going in the record, by the way?

COURT: Yes, everything is being made a part of the record, Mr. Young.

MR. YOUNG: Part of my transcript, correct?

COURT: It would be part of the transcript in this case, that is right.

MR. YOUNG: The only thing that I am asking the Court to do is appoint me other counsel and let me act as co-counsel.

COURT: Your motion will be denied. You can either accept Mr. Fikes, or you can go to trial as your own attorney.

MR. YOUNG: Well, the Court is not giving me the opportunity to subpoena the witnesses.

COURT: If you want to go to trial as your own attorney, Mr. Young, the Court will continue your case to give you the opportunity to get out the subpoenas for your witnesses.

MR. YOUNG: Then that is what I will do.

COURT: You will leave a list—

MR. YOUNG: I would rather go—like I said, I do believe it is illegal to have me stand and represent myself in a case like this. However, if the Court orders it at this time I will accept it. I do not want Mr. Fikes. I will act as my own counsel, but I do ask the Court to give me time to subpoena my witnesses.

COURT: The Court will give you that opportunity.

motive in moving for substitute counsel. *Id.* at 1114–15. We also considered that the trial judge had thoroughly explained Meyer's rights to him throughout the trial and that Meyer had acquired extensive experience with the criminal justice system. Further, we observed that Meyer's conduct throughout the trial indicated a good knowledge of the system.

Ordinarily, however, "we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him waive [sic] his right to counsel at trial." *Patterson,* 108 S.Ct. at 2398 (citing *Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541–42). Thus, *Meyer* stands as an exception to the general rule that to constitute a valid waiver of counsel the trial judge must apprise the defendant on the record of the advantages and disadvantages of self-representation. *See Berry v. Lockhart,* 873 F.2d 1168 (8th Cir.1989). In *Berry,* a habeas corpus case, we affirmed the district court's ruling that Berry did not knowingly and intelligently waive counsel, despite evidence that Berry had some college education and extensive experience with the criminal justice system. *Id.* at 1170–71.

The case at hand is distinguishable from *Meyer.* No evidence indicates that Young intended to obstruct trial in moving for substitute counsel. Appointed counsel had not visited Young for almost six months prior to his visit five days before trial. This does not necessarily reflect on the adequacy of counsel's preparation for trial, but it demonstrates that Young may have had cause to be anxious about counsel, especially because Young had already been convicted of a different rape while represented by the same appointed counsel. Moreover, while it is true that Young had some experience with the system, " 'even the most gifted layman' requires the help of counsel to 'adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross examine witnesses effectively, . . . object to improper prosecution questions, and much more.' " *Berry,* 873 F.2d at 1171 (quoting *Patterson,* 108 S.Ct. at 2398 n. 13).

This appeal unfortunately demonstrates the many fair-trial problems that may arise from forced self-representation. The majority of jurors in Young's first trial may have favored acquittal at the time the court declared a mistrial. But Young had no counsel to request that the jury be ordered to continue deliberating. Further deliberation may have resulted in acquittal.[2] Thus, Young suffered the risk of conviction without counsel in not one but two trials, inasmuch as he also represented himself at the second trial on the 1979 rape charge.

Accordingly, we hold that Young did not waive counsel knowingly and intelligently.[3] The case should be retried or else the writ should issue.

**B. Double Jeopardy**

■ Young argues that the trial court abused its discretion in declaring a mistrial and that retrial therefore violated the constitutional prohibition against double jeopardy. The following standard of review applies: "The trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." *Arizona v. Washington,* 434 U.S. 497, 510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978).

The record in this case is inadequate to demonstrate that the trial court abused its discretion in declaring a mistrial.[4] Young

---

**2.** The district court found that the trial court appointed stand-by counsel for Young. It is unclear from the record, however, whether Young was made aware that stand-by counsel had been appointed. In any case, the record does not indicate that stand-by counsel objected at this crucial point or did anything throughout the course of the trial to assist Young.

**3.** Although Young's decision to represent himself can be construed to be "voluntary" in a sense, *see Meyer,* 854 F.2d at 1114, to satisfy constitutional requirements the choice to forego counsel must also be "knowingly and intelligently made." *Berry,* 873 F.2d at 1170.

**4.** The trial transcript reflects that the following dialogue occurred:

   COURT: Would the foreman of the jury please rise. Mr. Henderson, I am advised by the Clerk that you have advised her that,

asserts that the jury deliberated for just two and one half hours, but we can find no record support for that amount of time. The record also does not disclose the length of the trial, except that it did not exceed a day.

Young has filed identical affidavits from three jurors stating that the trial judge and prosecuting attorney received prior knowledge of the split in the jury. The affidavits also suggest that the judge and prosecutor knew that the jury favored acquittal, but this point is ambiguous. The effect of such knowledge, if it in fact existed, presents an open question. *Cf. Holt v. Wyrick*, 649 F.2d 543, 551 (8th Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982). The trial record, however, contains no disclosure of whether the jury favored conviction or acquittal. Given the deference that we accord to the trial court, we cannot say that the trial court abused its discretion in declaring a mistrial.

### C. *Ex Post Facto* Violation

■ Lockhart argues that the district court erred in granting sentencing relief to Young on *ex post facto* grounds. This issue may be moot because of our holding that Young did not validly waive counsel. Nevertheless, we reject Lockhart's contention and affirm the district court's ruling on this issue.

The district court held that by sentencing Young as a class Y felon the trial court applied the law retroactively. The court also held that prejudice resulted because Young would have been entitled to the possibility of probation or a suspended sentence if he had been sentenced as a class A felon. Lockhart argued that Young would not have been entitled to the possibility of probation or a suspended sentence as a class A felon, because Ark.Code Ann. § 5–4–301(a)(1) (1987) (formerly codified at Ark.Stat.Ann. § 41–1201(1) (Repl.1977)) provides that a person convicted of "first degree rape" may not receive probation or a suspended sentence. The district court rejected this contention, reasoning that degrees of rape were eliminated by the Arkansas legislature in January of 1976 and that the prohibition against suspended sentences or probation for first-degree rapist did not apply to this case.

On appeal, Lockhart concedes that the State applied the law retroactively. Lockhart asserts, however, that prejudice did not result from this retroactive application of the law because class A felons are not eligible for probation or suspended sentences pursuant to the holding in *Harris v. State*, 15 Ark.App. 58, 689 S.W.2d 353, 354–55 (1985).

In *Harris*, the Arkansas Court of Appeals held that a sentencing court has no power to grant probation or a suspended sentence to a defendant convicted of rape as a class Y felony. The *Harris* court was not presented with an *ex post facto* argument and did not address the issue of whether a defendant convicted of rape as a class A felony qualifies for probation or a suspended sentence. Thus, *Harris* does not address the issue before us.

We consistently apply as our standard of review that "the interpretation of state law by a federal trial judge sitting in the forum is entitled to substantial deference." *Paton Farm Supply Co. v. Prestige Agri–Group, Inc.*, No. 88–2144, slip op. at 2 (8th Cir. Sept. 21, 1989 [889 F.2d 1090 (Table) ] ) (per curiam) (citing *Kifer v. Liberty Mutual Ins. Co.*, 777 F.2d 1325, 1330 (8th Cir. 1985)). We affirm the district court's interpretation of Arkansas law and agree that Young suffered an *ex post facto* application of the law.

your judgment, you are not going to be able to reach a decision in this case. Is that correct?
MR. HENDERSON: Yes, sir.
COURT: I am interested in numbers and not whether it is for guilty or for not guilty. But what is the numerical split in the jury?
MR. HENDERSON: Ten-two.
COURT: Do you feel that those individuals who are in the minority are so adamant in their position that further deliberations would be fruitless?
MR. HENDERSON: Yes, sir.
COURT: Ladies and gentlemen, the Court is going to declare a mistrial in the case....
Mr. Young, the Court is going to declare a mistrial in this case....

Nevertheless, Lockhart argues that the procedural bar doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precludes Young's *ex post facto* claim. According to Lockhart, Young's failure to follow Arkansas law and make a specific *ex post facto* objection at trial bars habeas corpus review of the claim. While our examination of Arkansas law discloses that "[a]n objection must be sufficiently specific to apprise the trial court as to the particular error complained of in order to preserve the right to appellate review," *Horn v. State*, 282 Ark. 75, 665 S.W.2d 880, 881 (1984) (citing *Tosh v. State*, 278 Ark. 377, 646 S.W.2d 6, 8 (1983)); *see also Crafton v. State*, 274 Ark. 319, 624 S.W.2d 440, 442 (1981) (containing citations), we are convinced that Young's pretrial motion objecting to the application of the wrong law apprised the trial court of the *ex post facto* violation. *Cf. Rowland v. State*, 262 Ark. 783, 561 S.W.2d 304, 310 (1978) (objection on grounds of relevance was not sufficiently specific to preserve objection of remoteness on appeal); *Fitzpatrick v. State*, 7 Ark.App. 246, 647 S.W.2d 480, 481 (1983) (hearsay objection at trial was not sufficient to preserve confrontation clause objection on appeal).

Lockhart further argues that *Wainwright* precludes review of the *ex post facto* claim because the Arkansas Supreme Court held that procedural errors on Young's part barred post-conviction relief. *Young v. State*, 287 Ark. 361, 699 S.W.2d 398, 399 (1985). Lockhart raised this argument for the first time to this court. By neglecting to raise it before the district court, however, Lockhart has waived this argument. *Estelle v. Smith*, 451 U.S. 454, 468 n. 12, 101 S.Ct. 1866, 1876 n. 12, 68 L.Ed.2d 359 (1981); *Jenkins v. Anderson*, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980); *Beavers v. Lockhart*, 755 F.2d 657, 662 (8th Cir.1985) (citing *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Ryder v. Morris*, 752 F.2d 327, 332 (8th

Cir.1985); *United States v. Glass*, 720 F.2d 21, 23 (8th Cir.1983)). As this court stated in *Beavers v. Lockhart:* "The general rule, of course, is that federal appellate courts will not consider issues not raised in the district court." 755 F.2d at 662.

Even if this argument were properly before this court, Young could still make a showing of cause and prejudice under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Id.* at 488, 106 S.Ct. at 2645. Invalid waiver of counsel provides cause in this case. Prejudice is demonstrated by Young's ineligibility for probation or a suspended sentence. Accordingly, the *Wainwright* procedural bar doctrine does not apply to the *ex post facto* issue.

## III. CONCLUSION

Because Young did not validly waive counsel, we reverse the order of the district court and direct the district court to issue the writ unless the State of Arkansas affords Young a new trial with representation by appropriate counsel. In all other respects, we affirm the order of the district court.[5]

BEAM, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion with regard to Parts IIB and IIC. However, I respectfully disagree with the conclusions reached by the majority in Part IIA.

In my view this case is controlled by the holding in *Meyer v. Sargent*, 854 F.2d 1110 (8th Cir.1988). Thus, the writ should not issue.

On February 3, 1983, petitioner's case was set for trial. It was scheduled to commence on July 19, 1983. On July 18, the day before the trial was to begin, peti-

---

5. Our holding on the waiver of counsel issue renders moot Young's claim of denial of counsel at sentencing. Young's claim of prejudicial preindictment delay lacks merit because Young has not demonstrated that the delay resulted from any improper purpose. *United States v. Lovasco*, 431 U.S. 783, 790–96, 97 S.Ct. 2044, 2048–52, 52 L.Ed.2d 752 (1977).

tioner asked that his court-appointed counsel, who was fully prepared for trial with a previously agreed upon theory of defense, be discharged and that petitioner be declared co-counsel along with a newly appointed lawyer. Understandably, the trial judge refused this last minute request and gave petitioner the option to represent himself or to continue with his current counsel. Petitioner decided on self-representation. Obviously, a newly appointed lawyer, even functioning as co-counsel as requested by petitioner, could not be prepared for trial as scheduled or even as reasonably delayed.

In *Meyer* this court held that a "defendant has no right to manipulate his right [to counsel] for the purpose of delaying and disrupting the trial." *Id.* at 1113 (quoting *United States v. White*, 529 F.2d 1390, 1393 (8th Cir.1976)). Meyer, during trial, sought to have his attorney dismissed. Like petitioner, he was given the option to proceed with appointed counsel or on his own behalf. He, also like petitioner, elected to represent himself. The court, in *Meyer*, unanimously determined that the district court acted within its discretion in denying the motion to provide substitute counsel. *Id.* at 1114.

It should also be noted here that petitioner represented himself at a trial at which a "hung" jury resulted. Even though a retrial occurred several months later, there is no indication in the record that petitioner sought appointment of a lawyer for the retrial. From this, it is clear that petitioner wanted to proceed, pro se, in the second proceeding. Therefore, under the circumstances of this case, petitioner knowingly, voluntarily and intelligently waived his right to counsel. This was his right. *See Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1980).

Accordingly, I dissent to that part of the majority opinion which requires retrial or release from custody because of the self-representation by petitioner.