**Timothy GILBERT, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 89–2954.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1990.

Decided April 19, 1991.

---

Gene Worsham, Little Rock, Ark., for appellant.

Elisabeth A. Walker, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Timothy Gilbert appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas, denying his petition for writ of habeas corpus. Gilbert alleged that he was denied his sixth amendment right to legal counsel because he was forced to proceed to trial either pro se or with unprepared counsel, and because the state trial court failed to elicit an intelligent and voluntary waiver of counsel. For the reasons discussed below, we reverse the judgment of the district court and remand the case to

the district court with directions to issue the writ of habeas corpus unless Gilbert is afforded a new trial by the State of Arkansas.

I.

On January 7, 1982, a jury convicted Gilbert of aggravated robbery and theft of property. He was sentenced, as an habitual offender, to a life sentence for aggravated robbery and twenty years for theft of property, sentences to run consecutively. The Arkansas Supreme Court affirmed the convictions, *Gilbert v. State*, 277 Ark. 61, 639 S.W.2d 346 (1982), and denied his pro se petition for post-conviction relief, *Gilbert v. State*, 282 Ark. 504, 669 S.W.2d 454 (1984).

The following underlying facts are undisputed. On the morning of Gilbert's criminal trial, his public defender filed a motion for continuance, claiming that he had had no opportunity to confer with Gilbert (due to Gilbert's imprisonment on a previous conviction) and that Gilbert had just given him the name of an alibi witness. The Circuit Court of Pulaski County denied the motion for continuance and instructed Gilbert that his trial would proceed as scheduled. Gilbert then requested new counsel, claiming that his public defender was unprepared to represent him. The state trial court gave Gilbert the option of proceeding pro se or with the public defender, but denied his request for a change of counsel. Gilbert elected to represent himself.

On May 4, 1987, Gilbert filed a pro se petition for a writ of habeas corpus with the United States District Court for the Eastern District of Arkansas. On November 22, 1988, the district court adopted the recommendations of the magistrate and dismissed all but three of the grounds Gilbert raised pro se. Counsel was appointed and filed an amended petition on January 23, 1989, which alleged, inter alia, that Gilbert was required to proceed to trial pro se

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

without having made a knowing and voluntary waiver of his right to counsel.[1]

On August 8, 1989, the magistrate issued a recommendation that Gilbert should be granted a new trial or the writ of habeas corpus should be issued, based on Gilbert's lack of a knowing and voluntary waiver of counsel. Specifically, the magistrate found that the state trial court failed to explain the perils of self-representation and that Gilbert lacked a sufficient knowledge of the criminal justice system to obviate the need for this instruction.

The district court rejected the magistrate's recommendations, however, and finding a proper waiver of counsel, denied Gilbert's habeas petition. Although the district court acknowledged that the state trial court failed to specifically advise Gilbert of the perils of proceeding pro se, it found that his "exposure to the criminal justice system, through the prosecution and conviction on eight felonies, gave him a general knowledge about the system and the dangers of self-representation." *Gilbert v. Lockhart*, No. PB–C–87–270, slip op. at 3 (E.D.Ark. Nov. 14, 1989) (*Gilbert*). The district court also found that Gilbert's motion for continuance and his motion for new counsel were merely efforts to manipulate the state trial court and delay trial. In essence, the district court found the instant case analogous to *Meyer v. Sargent*, 854 F.2d 1110 (8th Cir.1988) (*Meyer*), in which this court affirmed the denial of a habeas petition based on a finding of an effective waiver of counsel, despite the state trial court's failure to explicitly advise the defendant of the consequences of proceeding pro se. In the instant case, the district court noted: "[Gilbert's] insistence on proceeding pro se, after having had his motion for continuance and motion for substitution of counsel denied, is the 'functional equivalent of a "voluntary" waiver of his right to counsel in the sense that it was not a waiver forced upon him.'" *Gilbert*, slip op. at 2 (quoting *Meyer*, 854 F.2d at 1114). This appeal followed.

## II.

The issue on appeal is quite narrow—whether Gilbert made a voluntary, knowing, and intelligent waiver of his right to counsel. Gilbert argues that the district court erred in finding that he waived his constitutional right to counsel. He contends that the state trial court neglected to advise him of the hazards of self-representation, and it failed to determine whether he was competent to represent himself, all in violation of his sixth amendment right to counsel. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (*Edwards*); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (*Faretta*).

In *Faretta*, the Supreme Court stated: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)) (citations omitted). This court addressed the principles governing waiver of counsel in *Meyer*, and recognized that the "key inquiry" involves a determination of "whether the accused was 'made sufficiently aware of his right to have counsel' and 'of the possible consequences of a decision to forego the aid of counsel' so that his choice is made with his eyes open." *Meyer*, 854 F.2d at 1114 (quoting *Patterson v. Illinois*, 487 U.S. 285, 292–93, 108 S.Ct. 2389, 2394–95, 101 L.Ed.2d 261 (1988)).

Although it is preferable that the defendant be given "a specific warning on the

---

1. The amended petition also alleged the following: (1) Gilbert was denied effective assistance of counsel, (2) the state trial court improperly denied Gilbert's motion for a continuance in order to obtain substitute counsel, and (3) Gilbert was denied due process when the state trial court required the jury to resume deliberations after returning the verdict and in recommending a sentence that was outside the allowable range of punishment. These allegations are not before this court on appeal.

record of the dangers and disadvantages of self-representation," it is not an absolute requirement, "if the record shows that the defendant had this required knowledge from other sources." *Meyer,* 854 F.2d at 1114. In making this assessment, the reviewing court must examine "each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards,* 451 U.S. at 482, 101 S.Ct. at 1883 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

With respect to the voluntariness of his waiver, Gilbert argues that the state trial court coerced him into proceeding pro se by forcing him to choose between going to trial with unprepared legal counsel or no counsel at all. Gilbert claims that this was, in reality, no choice at all. Gilbert also argues that his prior experience with the legal system was insufficient to support the district court's inference that he understood the dangers and perils of self-representation. We agree.

We think the present case is distinguishable from *Meyer.* In *Meyer,* this court held that the waiver was knowing and intelligent because (1) during the course of the probation revocation hearings and the trial, the state trial judge "thoroughly explained to Meyer his rights in presenting his defense"; (2) Meyer had sufficient previous contacts with the criminal justice system to give him a "general knowledge of the dangers and disadvantages of self-representation," which was acknowledged by Meyer on several occasions; (3) Meyer's conduct during the trial and various hearings "indicated that he had a good knowledge of the

criminal justice system"; [2] and (4) the prior probation revocation hearing had given Meyer "a very good understanding of the case." [3] *Meyer,* 854 F.2d at 1114–15.

Furthermore, in *Meyer,* this court emphasized the fact that Meyer prepared his motion for new counsel before trial, but waited until after the prosecution presented overwhelming evidence of his guilt to file the motion. This fact contributed to the court's conclusion that "Meyer's actions in moving for replacement counsel midway through the trial were largely obstructionist," which it considered a "major factor" in its determination that there was no violation in his right to counsel. *Id.* at 1115.

In the instant case, we do not believe that the record supports a conclusion that Gilbert's motions for continuance and for replacement counsel were merely motivated by an interest in delaying the trial. [4] In addition, there is no evidence in the record that Gilbert had sufficient knowledge of the criminal justice system to obviate the need for an instruction on the hazards of proceeding pro se. The testimony in the habitual offender phase of the trial indicated that, of Gilbert's eight prior felony convictions, at least five resulted from guilty pleas. Very little knowledge of trial procedures can be garnered from a judicial proceeding in which the defendant pleads guilty to the crimes for which he is charged. Finally, there is no indication that Gilbert had any understanding of his case, unlike the situation in *Meyer.*

We believe that the instant case is more analogous to *Berry v. Lockhart,* 873 F.2d 1168 (8th Cir.1989) (*Berry*). In *Berry,* this

**2.** As an example, this court noted that Meyer himself prepared numerous motions covering a wide variety of legal issues and provided them to his public defender with instructions for submitting them to the court. *Meyer v. Sargent,* 854 F.2d 1110, 1115 (8th Cir.1988).

**3.** This court noted that Meyer claimed that the parole revocation procedure was so similar to a trial that the actual trial constituted a violation of the double jeopardy clause. *Meyer,* 854 F.2d at 1115.

**4.** Although the district court pointed to the fact that Gilbert lied to the state trial court concern-

ing his knowledge of who was representing him and his ability to read and write during the colloquy surrounding his motion for a continuance, we do not believe this constitutes sufficient evidence of an attempt to obstruct the trial. Also, it is not clear from the record that Gilbert lied about his knowledge of who was representing him. The transcript indicates that Gilbert claimed that, while he knew that the public defenders office was representing him, he did not know who in particular was representing him.

court affirmed the grant of a habeas petition on the ground that the defendant did not knowingly and intelligently waive his right to counsel when his motion for substituted counsel was denied and he was faced with the option of proceeding with unwanted counsel or pro se. Although *Berry* repeated the *Meyer* dicta that a specific, on the record warning of the dangers of self-representation was not always required, it held that the *Berry* record did not demonstrate a knowing and intelligent waiver, despite the fact that the defendant was "fairly well educated ... [and] had extensive experience with the criminal justice system due to his many prior convictions and his tenure as a law clerk in a prison library." *Id.* at 1170–71. In *Berry*, this court noted:

> That Berry had taken some college courses or had prior convictions is not enough to show he understood the dangers of self-representation at trial. "[E]ven the most gifted layman" requires the help of counsel to "adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross-examine witnesses effectively ... object to improper prosecution questions, and much more."

*Id.* at 1171 (quoting *Patterson v. Illinois*, 487 U.S. at 299 n. 13, 108 S.Ct. at 299 n. 13).

This case is also similar to *Young v. Lockhart*, 892 F.2d 1348 (8th Cir.1989) (*Lockhart*), in which this court reversed the denial of a habeas petition after holding that the defendant invalidly waived his right to trial counsel. In *Young*, the state trial court rejected the defendant's motion for replacement counsel and gave him the choice of accepting the appointed counsel or proceeding pro se. In holding that the defendant's choice to proceed pro se did not constitute a knowing and intelligent waiver of his right to counsel, this court held that there was no evidence that the defendant was attempting to obstruct the trial, nor was his experience with the criminal justice system sufficient to obviate the need for a

specific, on the record warning of the dangers of self-representation. *Id.* at 1352.

The *Young* court noted that "*Meyer* stands as an exception to the general rule that to constitute a valid waiver of counsel the [state] trial judge must apprise the defendant on the record of the advantages and disadvantages of self-representation." *Id.* at 1352 (citing *Berry*, 873 F.2d at 1170–71)); *see also Bumgarner v. Lockhart*, 920 F.2d 510, 512 n. 3 (8th Cir.1990). The *Young* court also stated: "Although [the defendant's] decision to represent himself can be construed to be 'voluntary' in a sense, to satisfy constitutional requirements the choice to forego counsel must also be 'knowingly and intelligently made.'" 892 F.2d at 1352 n. 3 (quoting *Berry*, 873 F.2d at 1170).

## III.

We believe that Gilbert was offered the "Hobson's choice" of proceeding to trial with unprepared counsel or no counsel at all. This fact, coupled with the fact that the state trial court failed to specifically advise him of the perils of proceeding pro se, convinces us that Gilbert's constitutional right to counsel was violated. The Supreme Court has imposed "the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois*, 487 U.S. at 298, 108 S.Ct. at 2398 (citing *Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541–42). Under the facts of the instant case, we are not convinced that it qualifies for exemption from this general rule. As the *Berry* court stated: "If the trial court had carefully examined [the defendant's] problems with [his counsel] and found them clearly insubstantial, it might have been justified in forcing [him] to trial without a lawyer. That did not happen here." 873 F.2d at 1171 (footnote omitted). That did not happen in this case either.[5]

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with directions to issue

---

5. We appreciate the excellent services of Gilbert's appointed counsel in this court.

the writ of habeas corpus unless the State of Arkansas affords Gilbert a new trial within 120 days with representation by appropriate counsel.