# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2408

———————

| | |
|---|---|
| Gary Lynn Underdahl, | * |
| | * |
| Appellant, | *  Appeal from the United States |
| | *  District Court for the |
| v. | *  District of Minnesota. |
| | * |
| Terry Carlson, | * |
| | * |
| Appellee. | * |

———————

Submitted: March 14, 2006
Filed: September 6, 2006

———————

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

———————

ARNOLD, Circuit Judge.

Gary Lynn Underdahl appeals the dismissal of his habeas corpus petition by the district court.[1]  *See* 28 U.S.C. § 2254.  We affirm.


I.

Mr. Underdahl is the father of three sons and one daughter with Karen Bachmeier.  When Ms. Bachmeier complained to authorities that Mr. Underdahl had abused and terrorized her after their relationship ended, the state of Minnesota

———————

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

investigated and charged him with nine counts that included assault, burglary, kidnapping, criminal sexual conduct, felony harassment, and making terroristic threats. At trial, Mr. Underdahl's three sons and his girlfriend, Beverly Peterson, testified on his behalf. Despite this, the jury found Mr. Underdahl guilty on all counts, and the court sentenced him to a term in prison of 127 months and one day.

Several months later, Mr. Underdahl's sons informed the police that they had perjured themselves when they testified at Mr. Underdahl's trial. They asserted that Mr. Underdahl had threatened them with violence, coached them as to what to say at trial, and abused them when they failed to recite their stories correctly. The government then charged Mr. Underdahl with three counts each of perjury, witness tampering, and soliciting juveniles to commit perjury. The children, as well as Ms. Peterson, testified against Mr. Underdahl at trial. Although Mr. Underdahl denied the accusations, the jury convicted him on all counts. The court-imposed sentence for these additional counts served to increase Mr. Underdahl's total term of imprisonment by thirty-six months.

Mr. Underdahl appealed this second conviction. The Minnesota Court of Appeals affirmed the conviction, but remanded the case for resentencing since Mr. Underdahl's conduct could have supported a conviction for only one count of perjury. *See State v. Underdahl*, No. C4-01-761, 2002 WL 485310 (Minn. Ct. App. Apr. 2, 2002). Mr. Underdahl then sought habeas review in federal district court, and the district court dismissed his petition after concluding that it contained both exhausted and unexhausted claims. On appeal, we remanded the case to allow Mr. Underdahl to amend his petition to include only exhausted claims. *Underdahl v. Carlson*, 381 F.3d 740, 744 (8th Cir. 2004). The district court gave Mr. Underdahl leave to amend the petition, considered the exhausted claims on the merits, and dismissed the petition with prejudice.

II.

Because this habeas corpus action involves a state-court conviction, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court cannot grant a writ of habeas corpus under § 2254 on any claim adjudicated on the merits in a state-court proceeding unless the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1). A state-court decision is "contrary to" Supreme Court precedent only when the state court reaches a conclusion on a question of law that is opposite that reached by the Supreme Court or decides a case "differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established federal law where it identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. *Id*. at 413. For an application of the law to be unreasonable, it must be more than merely wrong. *Green v. Norris*, 394 F.3d 1027, 1029 (8th Cir. 2005).

A.

Mr. Underdahl's first argument concerns the time that it took for this case to come to trial. He contends that the state held off indicting him for twenty-five months after finishing its investigation into the perjury accusations. In addition, there was a ten-month delay between the time that he was indicted and the commencement of Mr. Underdahl's trial. He argues that these pre- and post-charge delays effectively denied him his right to a speedy trial as guaranteed by the sixth amendment. As pre-charge and post-charge delay touch upon different constitutional guarantees, each must be discussed on its own.

In looking at the issue of post-charge or post-indictment delay, the Minnesota Court of Appeals correctly identified *Barker v. Wingo*, 407 U.S. 514 (1972), as the controlling Supreme Court authority on the matter. *Underdahl*, 2002 WL 485310, at

-3-

*2.  In *Barker*, 407 U.S. at 430, the Supreme Court identified four considerations that are important in determining whether a defendant's sixth-amendment right to a speedy trial has been violated:  the length of the post-charge delay, the reason for the delay, whether the defendant asserted the right to a speedy trial, and the prejudice that the defendant suffered because of the delay.  No single consideration is determinative as to whether the defendant's right to a speedy trial was violated.  *Id.* at 533.  That said, unless the length of the delay is "presumptively prejudicial," the court need not examine the other criteria.  *Id.* at 530.  How much time may pass before the delay is considered presumptively prejudicial depends on the circumstances of the case.  *Id.* at 530-31.

After reviewing the opinion of the Minnesota Court of Appeals, we conclude that its application of *Barker* to the facts of this case was reasonable.  Even if the delay between Mr. Underdahl's indictment and trial could be considered presumptively prejudicial, the record indicates that much of that delay resulted from continuances that Mr. Underdahl or his counsel asked for.  Any delay that came as a result of those requests therefore is not of the type that raises constitutional concerns. *See United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003).  Nor do we think that the Minnesota Court of Appeals was unreasonable in finding that Mr. Underdahl had not been prejudiced by the delay.  The Supreme Court has identified three separate ways that post-charge delay may prejudice a defendant:  " 'oppressive pretrial incarceration,' 'anxiety and concern' " about the defendant's fate, and impairment of the accused's defense.  *Doggett v. United States*, 505 U.S. 647, 654 (1992) (quoting *Barker*, 407 U.S. at 532).  As Mr. Underdahl was already serving his sentence for the crimes that he was convicted of in his first trial, the first criterion is moot.  There is no evidence that Mr. Underdahl suffered from additional anxiety or concern because of the delay.  And we believe that the Minnesota Court of Appeals reasonably concluded that the delay did not impair Mr. Underdahl's defense.  *Underdahl*, 2002 WL 485310, at *2.  We detect no error here.

-4-

As to the issue of pre-charge delay, the Minnesota Court of Appeals correctly identified the controlling legal principles laid out by the Supreme Court, albeit without citing the most apposite authorities on the topic. *Id.* at *2-*3. Any prosecutorial delay that occurs before a suspect has been arrested, or has been indicted or otherwise charged with a crime, does not come within the ambit of the sixth amendment. *See United States v. Marion*, 404 U.S. 307, 320 (1971). The speedy-trial analysis of *Barker* and *Doggett* is therefore inapplicable, and the defendant instead must press the issue as one of due process. Such a claim requires the defendant to show not only actual prejudice, but that the delay resulted from an improper purpose. *United States v. Lovasco*, 431 U.S. 783, 789-90 (1977); *Young v. Lockhart*, 892 F.2d 1348, 1354 n.5 (8th Cir. 1989). Because the Minnesota Court of Appeals reasonably concluded that there was no prejudice to Mr. Underdahl, *see Underdahl*, 2002 WL 485310, at *3, we affirm the district court's dismissal on the claim of pre-charge delay as well.

B.

During Mr. Underdahl's second trial, his sons testified that they had lied at the first trial out of fear of Mr. Underdahl and their concern that he would beat them if they did not testify as he wished. Two of his sons also testified that he had abused them when they were rehearsing their testimony, and all three said that he had abused both them and Ms. Bachmeier for years. During closing arguments, the prosecuting attorney adverted to this abuse by saying, "The charges in this trial are not for child abuse, they're for perjury and witness tampering. But this is where the kids get their vindication for the years of abuse. I hope you go back to the jury room and you'll think about it, what the kids went through all those years and justice that's denied them. And think about how this is the opportunity to rank [sic] at least a little bit of that." Mr. Underdahl's counsel immediately objected. After the defense made its closing arguments, the court told the jury that the prosecutor's earlier statement was improper and that the jurors should vote to convict only if they believed beyond a reasonable doubt that Mr. Underdahl committed the crimes at issue, not because they thought that he was guilty of some other bad acts. The court had instructed the jurors

earlier in the trial that they were not to convict Mr. Underdahl based on other crimes or bad acts.

On appeal to the Minnesota Court of Appeals, Mr. Underdahl argued that the prosecutor's improper comments were so prejudicial that they denied him the right to a fair trial. The court, citing Minnesota case law, said that it would reverse only if the misconduct was " 'inexcusable and so serious and prejudicial that a defendant's right to a fair trial is denied.' " *Underdahl*, 2002 WL 485310, at *4 (quoting *State v. Smith*, 541 N.W.2d 584, 588 (Minn. 1996). According to the Minnesota court, because the prosecutor's misconduct at closing had been "unusually serious," the state had to prove that the error was harmless beyond a reasonable doubt. *Id.* In considering the overall impact of the prosecutor's statements, the court noted the overwhelming evidence against Mr. Underdahl and the corrective action taken by the trial judge. It concluded that the statements, although improper, were harmless beyond a reasonable doubt. *Id.*

Our review of *Darden v. Wainwright*, 477 U.S. 168 (1986), convinces us that the Minnesota Court of Appeals employed the proper legal principle in analyzing Mr. Underdahl's claim. In *Darden*, as in this case, the issue was whether a prosecutor's improper statements violated the petitioner's right to a fair trial. Ruling that they did not, the Supreme Court said that the relevant question is whether the comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This statement of the law hews closely to the one made by the Minnesota Court of Appeals. And, in its application of this principle, we conclude that the Minnesota Court of Appeals was wholly reasonable. After Mr. Underdahl's closing arguments, the trial judge told the jurors that the only reason they should vote to convict was if they were convinced beyond a reasonable doubt that Mr. Underdahl was guilty of the crimes laid in the indictment. There is a presumption that jurors follow the court's instructions, *see Richardson v. Marsh*,

481 U.S. 200, 211 (1987), and Mr. Underdahl points to no evidence that would rebut that presumption. The district court's ruling on this issue was therefore correct.

## C.

In his habeas petition to the district court, Mr. Underdahl asked for an evidentiary hearing in which he could examine various state and county personnel who he maintains have subjected him to malicious prosecution. Mr. Underdahl also wished to call his brother, George, as a witness at the hearing. The district court denied Mr. Underdahl's request for an evidentiary hearing, and we review that decision for an abuse of discretion. *Osborne v. Purkett*, 411 F.3d 911, 915 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1569 (2006).

We cannot ascertain a basis for Mr. Underdahl's contention that he should be permitted to question state and county personnel. Despite his claim of malicious prosecution and his assertions at various times that a conspiracy existed to punish him for his complaints about "official misconduct," he fails to say how his assertions, even if true, would entitle him to habeas relief. Because he has not adequately explained his claim, we do not believe that the district court abused its discretion in refusing to permit him to call witnesses regarding it.

Mr. Underdahl's brother, George, lived with Mr. Underdahl, his sons, and Ms. Peterson before the first trial and, according to Mr. Underdahl, would have refuted the accusations that his sons and Ms. Peterson had made at that trial. Mr. Underdahl contends that the repeated delays before the second trial prevented George from traveling from Texas to Minnesota to testify, and he sought to have George appear at an evidentiary hearing to support his habeas claim. We suspect that the claim that the loss of George's testimony prejudiced Mr. Underdahl was defaulted or that it was reasonably rejected in the state courts, but the failure of the parties to file the records of the state-court proceedings prevents us from being certain about this.

Indeed, the lack of state-court records has considerably hampered our review of this case throughout.

We nevertheless have sufficient information to dispose of Mr. Underdahl's claim regarding George's testimony. Even if George was unwilling to brave the brisk winters of Minnesota to prevent what Mr. Underdahl terms a miscarriage of justice, Mr. Underdahl could have secured his presence through the issuance of an out-of-state subpoena. Since both Minnesota and Texas have codified the Uniform Act to Secure the Attendance of Witnesses From Without a State, *see* Minn. Stat. Ann. §§ 634.06, 634.07; Texas Code Crim. P. art. 24.28, Mr. Underdahl could have asked the Minnesota state court to certify that George was a necessary witness to his defense. With that certification, a Texas court could then have issued a summons directing George to give testimony at the Minnesota proceeding. *Id.* Because Mr. Underdahl could have used the court's subpoena power to secure George's attendance at the second criminal trial, the delay did not prejudice him. We therefore conclude that the district court did not abuse its discretion in denying Mr. Underdahl's request.

### III.

For the foregoing reasons, we affirm the district court's decision to dismiss Mr. Underdahl's petition with prejudice. We also deny Mr. Underdahl's motion for permission to file a pro se supplemental brief in this matter.

_____