**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0514n.06

**No. 11-2448**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MICHAEL STOKES, | ) | **FILED**<br>*May 22, 2013*<br>DEBORAH S. HUNT, Clerk |
| Petitioner-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| DEBRA SCUTT, Warden, | ) | |
| Respondent-Appellant. | ) | OPINION |

Before:  GUY, DAUGHTREY, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  A Michigan jury convicted petitioner Michael Stokes of assault with intent to do great bodily harm less than murder.  In a request for federal habeas relief from the state court judgment, Stokes argues that he was forced to represent himself at trial in violation of his Sixth Amendment right to counsel.  The State argues that this claim is barred by the procedural default doctrine.  Our consideration of this argument requires revisiting a long line of decisions that wrestle with the application of the procedural default doctrine to the Michigan state courts' practice of denying post-conviction relief based on ambiguous form orders.  *See Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

The district court determined that the procedural default doctrine did not bar review of Stokes's Sixth Amendment claim, concluded that the Michigan courts unreasonably applied clearly established federal law in denying that claim, and conditionally granted a writ of habeas corpus.

Because we disagree with the district court's procedural default determination, we REVERSE the conditional grant, and we REMAND this case for further proceedings.

## I. BACKGROUND

The State of Michigan originally charged Stokes with the crime of assault with intent to commit murder. The charge stemmed from an incident in which Stokes stabbed another man several times, causing life-threatening injuries. Stokes did not deny that he stabbed the man, but claimed that he did so in self-defense. At the preliminary examination, Stokes's appointed counsel Ira Harris argued that the victim's testimony was unreliable and that there was insufficient evidence of Stokes's intent, but he did not pursue a self-defense strategy.

On the first day of trial, Harris advised the judge for the first time that Stokes was dissatisfied with his counsel and was requesting a new attorney or to proceed *pro se*:

> MR. HARRIS: Your Honor, a few days ago I met with Mr. Stokes. And he submitted to me several pages of questions which he has asked me to direct to the witnesses in this matter. He's also written out a closing argument, which he has requested that I give.
> I told Mr. Stokes that while I appreciated his assistance, I was not going to be limited to the questions he propounded or the argument that he prepared.
> I told that again to Mr. Stokes today. And Mr. Stokes is upset. He thinks that I am not properly representing him. And he wants either another lawyer or he wishes to represent himself.

R. 11 at Page ID# 196–97. The prosecutor objected to substitute counsel, citing the time necessary to prepare a new attorney and the difficulty in getting the witnesses to the courthouse. He also noted that Stokes had a constitutional right to defend himself.

After expressing displeasure that counsel raised the issue at noon on the first day of trial, the judge stated that "[i]n terms of appointing a new attorney, we're just not going to do that at this

point." He then advised Stokes of his right to have a lawyer represent him in the case. Stokes responded with the complaints that his attorney had "no game plan," had not pursued a self-defense strategy during the preliminary examination, and had recently suggested that it might be preferable to consent to a bench trial.

The judge, Harris, and the prosecutor then met in chambers, after the judge promised Stokes that they would the review the questions Stokes wanted Harris to ask. The five-minute meeting was off the record and Stokes was not present. Afterward, the judge advised Stokes that Harris was not going to ask the questions, but assured him that Harris was "one of the best" attorneys in the building. The judge did not, however, explicitly state that Harris was prepared for trial. Nor did the judge explain why Harris would not ask the questions Stokes wanted him to ask. Nothing was entered into the record about what was said in chambers between the judge and counsel.

The judge then proceeded with an inquiry into Stokes's ability to represent himself and with an effort to advise him of the dangers. He inquired into Stokes's educational background, learning that Stokes had a GED and had completed a paralegal program while incarcerated. He explained to Stokes the potential penalties associated with the charges against him and discussed in some depth the risks of self-representation. The prosecutor advised Stokes that if he represented himself, Michigan law would preclude him from raising ineffective assistance of counsel on appeal.

After a short recess, Stokes and Harris proposed that Harris would represent Stokes during voir dire and advise Stokes throughout the trial, but that Stokes would give the opening and closing arguments and cross-examine witnesses with the questions he wanted asked. On hearing Stokes's

proposed division of responsibilities, the judge again engaged Stokes in a colloquy to advise him

against self-representation and to assure that he was voluntarily waiving his right to counsel:

> THE COURT: And do you understand that it's the Court's strong opinion that you do not represent yourself at any part of the proceedings in this case?
>
> MR. STOKES: Yeah, I understand that you think it's not a good idea.
>
> . . . .
>
> THE COURT: And you're still willing to proceed in a manner that we've spoken about?
>
> MR. STOKES: Well, I don't feel I have a choice, your Honor. I don't feel - I mean, it's like all that on the line that you're telling me that I'm facing. And I'm just going to -
>
> THE COURT: Well, we have clients that come in here each and every day with their attorneys. And their attorneys handle those cases.
>
> MR. STOKES: Well, we didn't have time to talk. And at no point did he bring any defense. He didn't suggest any defense. I had to do the research and do the work.
>
> THE COURT: Well, I understand Mr. Harris has been over to visit you a number of times.
>
> MR. STOKES: Yes, sir.
>
> THE COURT: And, of course, Mr. Harris can't make steak out of chopped liver. I mean, the defense - the defense comes from whatever it is that the - I mean, defense attorneys don't wave magic wands and make defenses.
>
> MR. HARRIS: We're ready to proceed.
>
> THE COURT: Are you ready to proceed, Mr. Stokes?
>
> MR. STOKES: Yes, sir.
>
> THE COURT: You're doing it with your eyes wide open?

> MR. STOKES: Yes, sir.
>
> THE COURT: And you know the consequences are quite severe with you representing yourself?
>
> MR. STOKES: Yes, sir.

*Id.* at 210–12. The judge then made an explicit finding in the record that Stokes understood the disadvantages of self-representation and had intelligently, voluntarily, knowingly, and unequivocally waived his right to counsel.

Stokes eventually signed a waiver of his Sixth Amendment right to counsel and represented himself at trial with Mr. Harris as standby counsel. Stokes gave the opening argument and cross-examined witnesses; he gave the closing argument and proposed jury instructions. In the end, the jury found him guilty of the lesser-included offense of assault with intent to do great bodily harm less than murder, and he received a sentence of ten to twenty years in prison.

Stokes unsuccessfully appealed his conviction to the Michigan Court of Appeals, filing one brief through newly appointed appellate counsel and one brief *in propia persona*. In this direct appeal, he did not raise the issue of whether his waiver of right to counsel at trial satisfied the requirements of the Sixth Amendment. Rather, Stokes raised this Sixth Amendment claim for the first time in his subsequent *pro se* application for leave to appeal to the Michigan Supreme Court. In that application, Stokes stated he had been "forced" to represent himself at trial, and therefore the waiver had violated his Sixth Amendment right to counsel. The Michigan Supreme Court denied the application in a one-sentence order, stating: "[W]e are not persuaded that the questions presented

5

No. 11-2448
*Stokes v. Scutt, Warden*

should be reviewed by this Court." *People v. Stokes*, 720 N.W.2d 314, 314 (Mich. 2006) ("Stokes I").

Stokes next filed a petition for writ of habeas corpus in federal court, seeking relief on the grounds that there was insufficient evidence to justify the charges and conviction and that omission of two requested jury instructions rendered the trial unfair. Stokes once again did not raise the Sixth Amendment claim, but the district court *sua sponte* raised it and held the petition in abeyance to permit Stokes to return to Michigan state court to exhaust the claim through post-conviction relief proceedings.[1]

All three Michigan courts reviewing Stokes's post-conviction claim denied relief with reference to Michigan Court Rule 6.508(D), which limits post-conviction relief in Michigan state courts. In relevant part, MCR 6.508(D) reads:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> . . . .
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

---

[1] "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This doctrine is codified at 28 U.S.C. § 2254(b)(1).

6

> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief.
> . . . .

MCR 6.508(D).

The state trial court issued a three page order that began and ended with reference to the procedural bar in MCR 6.508(D)(3). At the outset, citing MCR 6.508(D)(3)(b), the trial court noted that a defendant must show cause and prejudice in order to advance a request for post-conviction relief on a claim that could have been raised on direct appeal or in a prior motion for post-conviction relief. The court then reviewed the merits of Stokes's Sixth Amendment claim and concluded that: the waiver of counsel was knowing and intelligent; the court's procedures were proper; and Stokes's claim was thus without merit. Following discussion of the merits, the court determined that Stokes had not "shown 'good cause' under MCR 6.508(D)(3) as to why the issue presented in this motion was not previously raised on appeal," and "[f]urther, he has not proven actual prejudice." R. 19, Page ID# 617.

Stokes appealed the trial court's decision to the Michigan Court of Appeals. In that pro se appeal, Stokes did not address the trial court's decision that he had not shown "good cause" or proven actual prejudice under 6.508(D)(3). Instead, he pressed the argument that the trial court had failed to correctly rule on the merits of his Sixth Amendment claim. The Court of Appeals denied relief with a form order stating that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." R. 19 at Page ID# 618.

In his application for leave to appeal that order to the Michigan Supreme Court, Stokes again

did not address the MCR 6.508(D)(3) decision of the trial court. The only issue he raised was the

following:

> Whether or not the decision of the trial court and court of appeals requires reversal
> where the trial court failed to correctly interpret the ruling of the federal district judge
> in finding that trial counsel was ineffective during trial for specific individual acts
> and omissions of misconduct and that such conduct and that such conduct forced
> Defendant-Appellant to believe he had no other choice to obtain effective assistance
> of counsel but to represent himself where the trial judge's manner in resolving this
> situation was an abuse of discretion, bias, and impartial to Defendant-Appellant's
> constitutional right to effective assistance of trial counsel and if invalid waiver of
> counsel was proper and adequate during these proceedings.

Delayed Application for Leave to Appeal, Feb. 23, 2009, R. 27-4, PageID #714.

Denial by the Michigan Supreme Court of Stokes's application for leave to appeal began with

that same sentence as the Court of Appeals order, referencing MCR 6.508(D). Rather than stopping

there, the court continued: "We write further only to comment on the unusual posture of the case."

*People v. Stokes*, 772 N.W.2d 55, 55 (Mich. 2009) ("Stokes II"). It included several additional

paragraphs, summarizing the procedural posture of the case, emphasizing that the claim had already

been presented in the initial application for leave to appeal to that court, and quoting at length from

the portion of the state trial court's review of the merits of Stokes's claim.

Because the federal district court's refusal to find procedural default turned on the language

of the final two paragraphs of the Michigan Supreme Court order, we include those two paragraphs

here in full:

> Defendant . . . filed an appeal in the Court of Appeals raising the 'waiver of counsel'
> issue, which court denied defendant's application on the grounds that defendant had
> "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

8

Defendant now seeks leave to appeal in this Court raising the 'waiver of counsel' issue and we deny leave to appeal for the same reason.

As set forth above, the [federal] district court was apparently under the mistaken belief that defendant had not raised his 'waiver of counsel' issue in the state courts. In any event, having reviewed the written 'waiver of counsel' form signed by defendant on October 12, 2004, and the 24 pages of transcript that consisted of two separate extended discussions with defendant over the course of two days, we agree with the trial court that defendant's waiver was unequivocal. Even if this issue was being considered by this Court in the first instance, we would still deny relief from judgment because defendant has not established actual prejudice. MCR 6.508(D)(3)(b). In this latter regard, we note that even though defendant represented himself at trial, his former counsel conducted voir dire and otherwise assisted him as standby counsel throughout the trial.

*Stokes II*, 772 N.W.2d at 56.

After the Michigan Supreme Court issued this order, Stokes returned to federal court where the district court granted his motion to reopen the federal habeas petition. The district court carefully reviewed the wording of the Michigan Supreme Court's denial of relief and determined that the order was not clearly and unambiguously based on Stokes's failure to timely raise his Sixth Amendment claim, but appeared to be based on a combination of *res judicata* and denial on the merits. Concluding that the procedural default doctrine did not apply, the district court turned to the merits of the claim and found a violation of Stokes's Sixth Amendment rights.

The district court found that Stokes's waiver of his right to counsel was not knowing and voluntary as required by the Sixth Amendment because the state trial judge had not carefully addressed Stokes's concerns about his counsel and thus had presented him with a "Hobson's Choice" between unprepared counsel and no counsel at all. *Stokes v. Scutt*, 821 F. Supp. 2d 898, 911 (E.D. Mich. 2011) ("Stokes III"). Based on this finding, the court conditionally granted a writ of habeas

corpus. In doing so, the court did not reach Stokes's other claims regarding insufficiency of the evidence and omission of jury instructions.

## II. DISCUSSION

Under the procedural default doctrine, a federal court acting on a state prisoner's habeas petition will not review the petitioner's federal law claim if the last state court judgment denying relief on the claim rests on a procedural state law ground that is "independent of the federal question and is adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). Thus, a federal habeas claim is procedurally defaulted when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette*, 624 F.3d at 290.

In this case, the first and third prongs of the procedural default test are met. We have previously held that MCR 6.508(D)(3) is an independent and adequate state ground for the purpose of the procedural default doctrine. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Rule 6.508(D)(3) bars post-conviction relief on claims that "could have been raised on appeal from the conviction and sentence." Stokes could have raised his Sixth Amendment involuntary waiver claim on direct appeal to the Michigan Court of Appeals, but he did not. Stokes therefore failed to comply with the state procedural rule embodied in MCR 6.508(D)(3).[2] *See Skinner v. McLemore*,

---

[2]The nomenclature in procedural default cases is at best confusing, at worst inexplicable. The specific problem here arises from the language of MCR 6.508(D)(3), which states (in the negative) a category of claim on which a Michigan court may *not* grant post-conviction relief, instead of

425 F. App'x 491, 495 (6th Cir. 2011) (noting that MCR 6.508(D)(3) "clearly applies" where, as here, petitioner did not raise a claim on direct appeal to the Michigan Court of Appeals and raised it for the first time instead in the application for leave to appeal to the Michigan Supreme Court). *Cf. Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that a claim raised for the first time on a petition to a state's highest court was not "fair presentation" for the purposes of the exhaustion requirement in 28 U.S.C. § 2254(c)).

Whether the second and fourth prongs of the procedural default test are met present closer questions. The district court concluded that: the Michigan Supreme Court—in denying Stokes relief through a confusing and ambiguous order—had not actually enforced the procedural sanction of MCR 6.508(D)(3); the second prong was not satisfied; and the claim was not procedurally defaulted. Finding no default, the district court did not reach the cause and prejudice determinations in the fourth prong. We review the district court's procedural default decision *de novo*. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

## A. Actual enforcement of the procedural rule - Prong two

The Supreme Court has applied the "plain statement rule" of *Michigan v. Long*, 463 U.S. 1032 (1983), to the determination of whether the state court actually enforced a procedural rule on post-conviction review. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). Thus, "a procedural default

---

stating (in the positive) the requirements a petitioner must meet in order to request relief. To avoid repeating the full rule each time and despite its somewhat awkward fit with the negative subsections, we use "failure to comply" as a reference to the initial part (D) requirement that the defendant has the "burden of establishing entitlement" to relief. Here Stokes "failed to comply" (failed to show entitlement to relief) because he did not properly raise his Sixth Amendment claim "on appeal from the conviction and sentence or in a prior motion [for post-conviction relief]." MCR 6.508(D)(3).

11

does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a procedural bar." *Id.* (internal quotation marks omitted).

The plain statement rule does allow a state court to reach the merits of the federal claim "in an *alternative* holding" without jeopardizing a finding of procedural default. *Id.* at 264 n.10 (emphasis in original). In such cases, however, to result in a procedural bar to federal habeas review, the state court must "explicitly invoke[] a state procedural bar rule as a separate basis for decision." *Id.* Conversely, "[w]hen the decision rests upon procedural default 'as an alternative ground,' we may, but are not required to, reach the merits of the claim on habeas review." *Hanna v. Ishee*, 694 F.3d 596, 607 (6th Cir. 2012) (citing *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991)).[3]

To determine whether state courts have clearly and expressly invoked a state procedural bar, a federal habeas court looks to the last state court to be presented with the federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). Thus, even where a state trial court or appellate court expressly invokes a state procedural bar, federal habeas review may not be precluded if the state's

---

[3]We also note that the independent and adequate state ground doctrine—and the plain statement it requires—is "not technically jurisdictional" in the context of a § 2254 claim. *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997). Thus, where the merits of a claim "present a more straightforward ground for decision," we may consider the merits of the claim first and then reach the procedural default question only if necessary. *See Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing *Lambrix*, 520 U.S. at 525). Here, however, the merits of Stokes's constitutional claim involve a complex cross-section of the right to self-representation under *Faretta v. California*, 422 U.S. 806, 818 (1975), and the proper procedure for addressing a motion for substitute counsel. *See, e.g.*, *Martel v. Clair*, 132 S. Ct. 1276, 1288 (2012) (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)). As a result, we do not see resolution of Stokes's claim on the merits as a more straightforward ground for decision.

highest court instead reaches the merits of the claim without expressly ruling on the procedural question. *Id.* However, where the last state-court judgment is an "unexplained" order upholding a prior judgment or rejecting the same claim, a federal court applies a presumption that gives the unexplained judgment "no effect" and "simply 'looks through' . . . to the last reasoned decision." *Id.* at 804.

An order need not be "utterly silent" to be unexplained. *Ylst*, 501 U.S. at 805 (finding an order unexplained and subject to look through where it contained two case citations, but nothing more). Rather, to the extent that this court has considered the standard, an order is unexplained when it is "simply not 'informative with respect to the question'" of the basis for the decision. *Guilmette*, 624 F.3d at 293 (Boggs, J., concurring in part and dissenting in part) (quoting *Ylst*, 501 U.S. at 805.).

In *Guilmette*, we concluded that a one-sentence order denying relief because "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)" is "unexplained" and subject to "look through" for the purpose of the procedural default doctrine. 624 F.3d at 291. We reached this conclusion because various subsections of MCR 6.508(D) do not necessarily invoke a procedural bar. "Rule 6.508(D)'s introductory sentence requiring the petitioner to establish his entitlement to relief applies to both the procedural and merits aspects of a petitioner's claim." *Guilmette*, 624 F.3d at 291 (citing *People v. Jackson*, 633 N.W.2d 825, 833–34 (Mich. 2001)). And MCR 6.508(D)(2) is akin to a *res judicata* rule and therefore subject to its own "look through" to the prior judgment creating the *res judicata* effect. *See Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004). Recognizing that MCR 6.508(D) had been used to deny relief on the merits as well as for procedural reasons, we concluded in *Guilmette* that "[b]rief orders citing

Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." 624 F.3d at 289.

Instead, a reviewing court should look through these orders to the last reasoned decision below to

determine the basis for rejection of the claim. *Id.* at 291.

The State contends the application of *Guilmette* here requires a finding of procedural default.

Both the decision of the Michigan Supreme Court and the Michigan Court of Appeals rest explicitly

on references to MCR 6.508(D). The State argues that both decisions are therefore not "reasoned"

or "explained" judgments pursuant to *Guilmette*. If that is correct, the proper procedure is to look

through them to the last reasoned opinion, the state trial court's denial of post-conviction relief. The

trial court decision expressly invoked the procedural bar in MCR 6.508(D)(3) and therefore would

support a finding that the Michigan courts actually enforced an independent and adequate state

procedural rule in denying Stokes relief.

Stokes responds that *Guilmette* does not control our decision because in *Guilmette* we

concluded only that bare one-sentence orders referencing MCR 6.508(D) should be considered

"unexplained" and subject to "look through," and here the Michigan Supreme Court's order contains

eight paragraphs following the reference to MCR 6.508(D). Stokes argues that the order is therefore

"reasoned," *Ylst*, 501 U.S. at 804, and should be reviewed to determine if the plain statement rule

has been satisfied.

Stokes then points specifically to the final paragraph of the order that states "[e]ven if this

issue was being considered by this Court in the first instance, we would still deny relief from

judgment because defendant has not established actual prejudice. MCR 6.508(D)(3)(b)." He argues

that the "even if" introductory clause suggests that the case was not being considered for the first

time and indicates (though not expressly) that the Michigan Supreme Court was denying relief under the *res judicata* provision in MCR 6.508(D)(2), not under MCR 6.508(D)(3). This inference is supported by references in the order to the fact that on his direct appeal, Stokes raised the claim in his first application for leave to appeal to the Michigan Supreme Court.

We agree with the district court that the language in the last two paragraphs of the Michigan Supreme Court order borders on inscrutable. First, if the Michigan Supreme Court did rest its denial of relief on the *res judicata* provision in MCR 6.508(D)(2) as Stokes suggests, that would be an abrupt and unexplained departure from the holding of other Michigan courts that "Rule 6.508(D)(2) does not bar claims raised for the first time in a direct appeal to the Michigan Supreme Court where the Supreme Court has denied the application for leave to appeal." *Lamb v. Jones*, No. 03-73587, 2005 WL 1378762 (E.D. Mich. June 2, 2005) (citing *People v. Shook*, No. 233346, 2002 WL 31379664, at *2 (Mich. Ct. App. Oct. 22, 2002)). Adding to the confusion, the last two paragraphs also state that the court denies relief to Stokes "for the same reasons" as the Michigan Court of Appeals. The Michigan Court of Appeals made only a bare reference to MCR 6.508(D), language that *Guilmette* requires us to look through to the last reasoned decision—the trial court's decision invoking MCR 6.508(D)(3).

Nonetheless, we need not grapple with the internally inconsistent language in the last two paragraphs of the order because the Michigan Supreme Court specifically stated that we should not. Following the reference to MCR 6.508(D) in the first sentence of the order, the Michigan Supreme Court explicitly stated that it wrote further "only to comment on the unusual posture of the case." We read this language as a "plain statement" that we are not to consider the eight paragraphs that

15

follow as indicating the basis for the court's decision. As a result, we are left only with the first sentence, a bare and unexplained reference to MCR 6.508(D). Applying *Guilmette,* we look through that language to the last reasoned opinion—the state trial court's decision clearly and unambiguously denying post-conviction relief on the basis of the procedural bar in MCR 6.508(D)(3).

In sum, we share the district court's concern with the problematic order of the Michigan Supreme Court. Even so, we find the order sufficient under *Guilmette* to support a finding that the Michigan courts actually enforced the state procedural bar in MCR 6.508(D)(3) as an independent basis for denying relief on Stokes's Sixth Amendment claim. The first three prongs of the procedural default doctrine test are therefore met, and we may only review the merits of Stokes's Sixth Amendment claim if he is able to demonstrate both cause for and prejudice from his failure to raise the claim on direct appeal to the Michigan Court of Appeals.

## B. Cause and prejudice - Prong four

Even when the first three prongs of the test leading to a procedural default are met, a petitioner still may be able to secure federal court review of the merits of his claim if he can "(1) present a substantial reason to excuse the default [i.e. show cause], and (2) show that he was actually prejudiced as a result of the claimed constitutional error." *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002) (citations omitted). To avoid procedural default, Stokes must present his case as outside the fourth prong by showing *both* cause and prejudice. We need not consider whether Stokes has shown prejudice if he cannot show cause.

"The 'cause' standard in procedural-default cases requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise a claim in the state

courts." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available." *Id*. As the State argues, however, Stokes was aware of the factual basis supporting his Sixth Amendment claim as of the day of his trial, and his claim is not based on any facts that were disclosed at some later date or otherwise withheld by opposing counsel or the court.

Stokes, for his part, directs our attention to *Wogenstahl*, in which we noted that a claim of ineffective assistance of appellate counsel ("IAAC") may under some circumstances serve as cause to excuse the state-court procedural default of other constitutional claims. 668 F.3d at 321–22, 338. Stokes presumably means to suggest that the procedural default of his Sixth Amendment involuntary waiver claim should be excused due to constitutionally defective performance by the attorney appointed to represent him in the direct appeal of his conviction.

*Wogenstahl*, though, is distinguishable because Wogenstahl raised an IAAC claim in state court as cause to excuse his default. Wogenstahl brought the IAAC claim to the state court of appeals in a motion to reconsider that court's denial of his appeal on direct review, and then again alleged the IAAC claim in his application for leave to appeal to the state's highest court. *See State v. Wogenstahl*, 662 N.E.2d 16, 16–17 (Ohio 1996). Stokes, on the other hand, raised only his substantive claim of involuntary waiver of counsel and that only to the Michigan Supreme Court. He *never* alleged IAAC or made any other argument to excuse the default—to show cause—either on direct review or in his requests for post-conviction relief in state court. In fact, Stokes did not

even allege IAAC in his federal habeas petition. And, aside from implying such an argument by referencing *Wogenstahl*, Stokes still has not directly alleged IAAC or attempted any cause showing.

Moreover, even if Stokes had alleged IAAC in his federal habeas petition, we could not consider IAAC as cause to excuse his procedural default. Citing the exhaustion requirements of 28 U.S.C. § 2254, the Supreme Court has squarely rejected the possibility of raising IAAC for this purpose for the first time in a federal habeas proceeding:

> [I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And . . . the principles of comity and federalism that underlie our longstanding exhaustion doctrine -- then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c) -- require that constitutional claim, like others, to be first raised in state court. '[A] claim of ineffective assistance,' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'

*Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). Because Stokes never raised a claim of IAAC in state court, we cannot now consider any ineffective assistance by Stokes's appellate counsel as cause to excuse the procedural default of his Sixth Amendment involuntary waiver of right to counsel claim.

With no exhausted IAAC claim, no claim of a newly available factual or legal basis, and no other theory of an external impediment to Stokes's appellate representation, we are constrained to conclude that Stokes has not presented cause to excuse the procedural default. Therefore, there is no need to consider whether Stokes is prejudiced by the procedural default. The fourth prong of the test is met, and Stokes's Sixth Amendment involuntary waiver claim is procedurally defaulted.

### III. CONCLUSION

After carefully considering the long record in this case, we determine that the Stokes's untimely Sixth Amendment claim did not comply with MCR 6.508(D)(3), that the Michigan state courts actually enforced MCR 6.508(D)(3) in denying relief on that claim, and that Stokes cannot show cause to excuse his failure to satisfy MCR 6.508(D)(3). The procedural default doctrine thus bars us from considering the merits of Stokes's Sixth Amendment involuntary waiver of counsel claim.[4]

For the above reasons, we **REVERSE** the conditional grant of habeas corpus, and **REMAND** the case to the district court for further proceedings consistent with this opinion, including for consideration of the other claims of constitutional error Stokes raised in his petition.

---

[4]Though Stokes has not raised this issue, to reach this conclusion we also have determined that the failure to consider the merits of Stokes's Sixth Amendment claim will not result in "a fundamental miscarriage of justice," such as would occur where "in light of . . . new evidence, no juror, acting reasonably, would have voted to find [Stokes] guilty beyond a reasonable doubt." *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted).

No. 11-2448
*Stokes v. Scutt, Warden*

MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring separately.

After a thorough recapitulation of the events in the state trial court giving rise to this appeal, the majority concludes in footnote three that the merits of Stokes's Sixth Amendment claim "involve a complex cross-section of the right to self-representation under *Faretta v. California*, 422 U.S. 806, 818 (1975), and the proper procedure for addressing a motion for substitute counsel" and opts instead to resort to the doctrine of procedural default to resolve the appeal. But, the exercise of wading – perhaps slogging is a better description – through the intellectual morass of Michigan's somewhat unusual appellate and post-conviction procedural rules strikes me as a far more complex approach to the resolution of this case than a straightforward review of its merits under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). Moreover, that path is a potentially perilous one that requires our parsing of state statutes and thereby poses the risk that we will get the Michigan procedural rules wrong. In contrast, dealing with the Sixth Amendment is a trip through familiar territory.

Under § 2254(d)(1) and (2), federal habeas relief may not be granted to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court decision is entitled to

20

a high level of deference under AEDPA and cannot be reviewed for "ordinary error correction,"

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), although that appears to be what the district court

did in the instant case.

The principal determination on the merits in this case came in a post-conviction action filed

by Stokes in the trial court that resulted in an opinion upheld by the Michigan Supreme Court. The

state trial court made the following determination concerning Stokes's Sixth Amendment claim:

> Defendant argues that he had "no purpose or design" to represent himself during trial and that he was forced into self-representation. Before granting defendant's request to proceed in propria persona, trial courts must substantially comply with waiver of counsel procedures set forth in *People v. Anderson*, 398 Mich. 361; 247 N.W.2d 857 (1976) and MCR 6.005(D). Substantial compliance requires [a] court to discuss with defendant waiver of counsel requirements and to determine that defendant fully understands, recognizes, and agrees to abide by these procedures. *People v. Ahumada*, 222 Mich. App. 612; 564 N.W.2d 188 (1997). The trial judge is in the best position to determine whether the defendant has made the waiver knowingly and voluntarily. *Id.*
>
> There are three main requirements with which a court must comply in this context. First, the defendant's request must be unequivocal. Second, the defendant must assert his right to self-representation knowingly, intelligently, and voluntarily. In assuring a knowing and voluntary waiver, the trial court must make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that his choice is made with eyes open. *Id*. Third, the court must establish that the defendant will not unduly disrupt the court while acting as his own counsel. *Id*. In addition, MCR 6.005 requires the trial court to offer the assistance of an attorney and to advise the defendant about the possible punishment for the charged offense. *Id*.
>
> Here the record indicates that the defendant's request was unequivocal, as the court asked the defendant if he wished to represent himself and the defendant answered in the affirmative. The defendant also indicated that he had prior work experience as a paralegal and as a result of that experience was capable of preparing his trial strategy. Further the court advised the defendant of his continued right to counsel and that the counsel assigned to his case was a very capable attorney and one of the

> "best in the building." The court also advised defendant of the statutory maximum penalty for the crime for which he was charged. A thorough review of the record indicates that the court properly determined that defendant's desire to represent himself was knowing and intelligent. As such, there was no violation of defendant's sixth amendment right to counsel. Defendant's claim is without merit.

*People v. Stokes*, No. 04-07072-01, at 2 (Mich. Cir. Ct. May 20, 2008).

The Michigan Supreme Court denied Stokes's application for leave to appeal. In the order denying review, the court set out in full the trial court's analysis of the *Faretta* hearing and pointed out, in addition, "that even though defendant represented himself at trial, his former counsel conducted voir dire and otherwise assisted him as standby counsel throughout the trial." *People v. Stokes*, 772 N.W. 2d 55, 56 (Mich. 2009). The court might also have noted that, in the end, Stokes accomplished what he set out to do, *i.e.*, ask a prepared list of questions of the witnesses and press his own theory of defense, while still having standby counsel available as needed.

The district court was appropriately solicitous of Stokes's right to counsel but paid less attention to the fact that his dissatisfaction with his attorney was not communicated to the court – and apparently not even to his attorney – until the morning of trial; that the trial judge carefully went over all the issues necessary to a fair determination of the validity of Stokes's waiver; and that the judge saw a copy of the script Stokes had created and took a recess to go over it with defense counsel and to satisfy himself, if not Stokes, that the lawyer was prepared for trial. The district court nevertheless concluded that Stokes was faced with a "'Hobson's choice' of either proceeding to trial with an attorney whom [Stokes] *felt was unprepared* or with no counsel at all," resulting in a

violation of his Sixth Amendment right to counsel so substantial that it merited the issuance of the writ.[1] *Stokes v. Scutt*, 821 F.Supp. 2d 898, 911 (E.D. Mich. 2011) (emphasis added). But, as the state now points out, a defendant must demonstrate more than a "feeling" that his counsel is not prepared for trial in order to establish a constitutional violation, particularly when – as here – the attorney declares on the record that he *is* prepared to proceed, and the trial court is satisfied that the defendant's choice to represent himself is made with full knowledge of the difficulty he faces.

The district court based its conclusion on two cases, both of which are distinguishable from the one at hand. The first, *Gilbert v. Lockhart*, is an Eighth Circuit case in which the state trial judge denied a request for a continuance made on the morning of trial by Gilbert's counsel, a public defender who "claim[ed] that he had had no opportunity to confer with Gilbert (due to Gilbert's incarceration on a previous conviction) and that Gilbert had just given him the name of an alibi witness." 930 F.2d 1356, 1357 (8th Cir. 1991). When the motion was denied and Gilbert asked for new counsel, pointing out that his attorney was unprepared to represent him, "the state trial court gave [him] the option of proceeding pro se or with the public defender . . . [and] Gilbert elected to represent himself." *Id.* Not surprisingly, the Eighth Circuit determined that Gilbert had indeed been offered "the 'Hobson's choice' of proceeding to trial with unprepared counsel or no counsel at all," *id.* at 1360, and directed the writ to issue. *Id.* at 1360-61. Defense counsel in this case, by contrast,

---

[1] The district court supplied a definition of "Hobson's choice" as "an apparently free choice that offers no actual alternative," and its source as Thomas Hobson (1544-1631), "an English liveryman, from his requirement that customs take either the horse nearest the stable door or none," leading the state's attorney to point out in his brief on appeal that when "the government is providing the horse, and the 'horse nearest the door' is perfectly competent, the trial court may require the defendant to accept the 'horse nearest the door' or go by foot." *Stokes*,, 821 F.Supp 2d at 911 n.5.

assured the trial judge that he was prepared to proceed to trial, and the record thus reflects that Stokes's choice was between either representation by counsel prepared to proceed or self-representation, which is also his right under *Faretta*, in this case with the advice of stand-by counsel.

In the other case cited by the district court, *James v. Brigano*, the state trial judge allowed James to "fire" his attorney after counsel moved to withdraw because he was not prepared to go to trial and "could not properly represent James." 470 F.3d 636, 639 (6th Cir. 2006). But, the trial judge "did not inquire into James's reasons for wanting to fire [his attorney], nor did the trial judge explain the risks and dangers of self-representation," instead "permitt[ing] James to represent himself, without making a specific finding that James's waiver of counsel was knowing or intelligent." *Id.* In that case, we held that "even under the AEDPA standard, the finding [by the state court of appeals] that James knowingly and intelligently waived appointed counsel was a failure to apply clearly established Supreme Court precedent." *Id.* at 644. Obviously, the situation in *James* was so distinct from the one before us, in every relevant way, that the district court's reliance on it is, at best, puzzling.

Measured against the AEDPA standard, the state court's ruling that Stokes had executed a constitutionally valid waiver of his right to representation by counsel was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For that reason, I would reverse the judgment of the district court in ruling to the contrary.