MARTHA CRAIG DAUGHTREY, Circuit Judge,
concurring separately.
After a thorough recapitulation of the events in the state trial court giving rise to this appeal, the majority concludes in footnote three that the merits of Stokes’s Sixth Amendment claim “involve a complex cross-section of the right to self-representation under Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the proper procedure for addressing a motion for substitute counsel” and opts instead to resort to the doctrine of procedural default to resolve the appeal. But, the exercise of wading — perhaps slogging is a better description— through the intellectual morass of Michigan’s somewhat unusual appellate and post-conviction procedural rules strikes me as a far more complex approach to the resolution of this case than a straightforward review of its merits under the Anti-terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). Moreover, that path is a potentially perilous one that requires our parsing of state statutes and thereby poses the risk that we will get the Michigan procedural rules wrong. In contrast, dealing with the Sixth Amendment is a trip through familiar territory.
Under § 2254(d)(1) and (2), federal ha-beas relief may not be granted to a state prisoner “with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreason *369 able application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” A state court decision is entitled to a high level of deference under AEDPA and cannot be reviewed for “ordinary error correction,” Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), although that appears to be what the district court did in the instant case.
The principal determination on the merits in this case came in a post-conviction action filed by Stokes in the trial court that resulted in an opinion upheld by the Michigan Supreme Court. The state trial court made the following determination concerning Stokes’s Sixth Amendment claim:
Defendant argues that he had “no purpose or design” to represent himself during trial and that he was forced into self-representation. Before granting defendant’s request to proceed in propria persona, trial courts must substantially comply with waiver of counsel procedures set forth in People v. Anderson, 398 Mich. 361, 247 N.W.2d 857 (1976) and MCR 6.005(D). Substantial compliance requires [a] court to discuss with defendant waiver of counsel requirements and to determine that defendant fully understands, recognizes, and agrees to abide by these procedures. People v. Ahumada, 222 Mich.App. 612, 564 N.W.2d 188 (1997). The trial judge is in the best position to determine whether the defendant has made the waiver knowingly and voluntarily. Id. There are three main requirements with which a court must comply in this context. First, the defendant’s request must be unequivocal. Second, the defendant must assert his right to self-representation knowingly, intelligently, and voluntarily. In assuring a knowing and voluntary waiver, the trial court must make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that his choice is made with eyes open. Id. Third, the court must establish that the defendant will not unduly disrupt the court while acting as his own counsel. Id. In addition, MCR 6.005 requires the trial court to offer the assistance of an attorney and to advise the defendant about the possible punishment for the charged offense. Id.
Here the record indicates that the defendant’s request was unequivocal, as the court asked the defendant if he wished to represent himself and the defendant answered in the affirmative. The defendant also indicated that he had prior work experience as a paralegal and as a result of that experience was capable of preparing his trial strategy. Further the court advised the defendant of his continued right to counsel and that the counsel assigned to his case was a very capable attorney and one of the “best in the building.” The court also advised defendant of the statutory maximum penalty for the crime for which he was charged. A thorough review of the record indicates that the court properly determined that defendant’s desire to represent himself was knowing and intelligent. As such, there was no violation of defendant’s sixth amendment right to counsel. Defendant’s claim is without merit.
People v. Stokes, No. 04-07072-01, at 2 (Mich.Cir.Ct. May 20, 2008).
The Michigan Supreme Court denied Stokes’s application for leave to appeal. In the order denying review, the court set *370 out in full the trial court’s analysis of the Faretta hearing and pointed out, in addition, “that even though defendant represented himself at trial, his former counsel conducted voir dire and otherwise assisted him as standby counsel throughout the trial.” People v. Stokes, 485 Mich. 883, 772 N.W.2d 55, 56 (2009). The court might also have noted that, in the end, Stokes accomplished what he set out to do, ie., ask a prepared list of questions of the witnesses and press his own theory of defense, while still having standby counsel available as needed.
The district court was appropriately solicitous of Stokes’s right to counsel but paid less attention to the fact that his dissatisfaction with his attorney was not communicated to the court — and apparently not even to his attorney — until the morning of trial; that the trial judge carefully went over all the issues necessary to a fair determination of the validity of Stokes’s waiver; and that the judge saw a copy of the script Stokes had created and took a recess to go over it with defense counsel and to satisfy himself, if not Stokes, that the lawyer was prepared for trial. The district court nevertheless concluded that Stokes was faced with a “ ‘Hobson’s choice’ of either proceeding to trial with an attorney whom [Stokes] felt was unprepared or with no counsel at all,” resulting in a violation of his Sixth Amendment right to counsel so substantial that it merited the issuance of the writ.[1] Stokes v. Scutt, 821 F.Supp.2d 898, 911 (E.D.Mich.2011) (emphasis added). But, as the state now points out, a defendant must demonstrate more than a “feeling” that his counsel is not prepared for trial in order to establish a constitutional violation, particularly when — as here — the attorney declares on the record that he is prepared to proceed, and the trial court is satisfied that the defendant’s choice to represent himself is made with full knowledge of the difficulty he faces.
The district court based its conclusion on two cases, both of which are distinguishable from the one at hand. The first, Gilbert v. Lockhart, is an Eighth Circuit case in which the state trial judge denied a request for a continuance made on the morning of trial by Gilbert’s counsel, a public defender who “claim[ed] that he had had no opportunity to confer with Gilbert (due to Gilbert’s incarceration on a previous conviction) and that Gilbert had just given him the name of an alibi witness.” 930 F.2d 1356, 1357 (8th Cir.1991). When the motion was denied and Gilbert asked for new counsel, pointing out that his attorney was unprepared to represent him, “the state trial court gave [him] the option of proceeding pro se or with the public defender ... [and] Gilbert elected to represent himself.” Id. Not surprisingly, the Eighth Circuit determined that Gilbert had indeed been offered “the ‘Hobson’s choice’ of proceeding to trial with unprepared counsel or no counsel at all,” id. at 1360, and directed the writ to issue. Id. at 1360-61. Defense counsel in this case, by contrast, assured the trial judge that he was prepared to proceed to trial, and the record thus reflects that Stokes’s choice was between either representation by counsel prepared to proceed or self-representation, which is also his right under *371 Faretta, in this case with the advice of stand-by counsel.
In the other case cited by the district court, James v. Brigano, the state trial judge allowed James to “fire” his attorney after counsel moved to withdraw because he was not prepared to go to trial and “could not properly represent James.” 470 F.3d 636, 639 (6th Cir.2006). But, the trial judge “did not inquire into James’s reasons for wanting to fire [his attorney], nor did the trial judge explain the risks and dangers of self-representation,” instead “permitt[ing] James to represent himself, without making a specific finding that James’s waiver of counsel was knowing or intelligent.” Id. In that case, we held that “even under the AEDPA standard, the finding [by the state court of appeals] that James knowingly and intelligently waived appointed counsel was a failure to apply clearly established Supreme Court precedent.” Id. at 644. Obviously, the situation in James was so distinct from the one before us, in every relevant way, that the district court’s reliance on it is, at best, puzzling.
Measured against the AEDPA standard, the state court’s ruling that Stokes had executed a constitutionally valid waiver of his right to representation by counsel was not “a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law” nor was it “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(l)-(2). For that reason, I would reverse the judgment of the district court in ruling to the contrary.

. The district court supplied a definition of "Hobson’s choice” as “an apparently free choice that offers no actual alternative,” and its source as Thomas Hobson (1544-1631), "an English liveryman, from his requirement that customs take either the horse nearest the stable door or none,” leading the state's attorney to point out in his brief on appeal that when "the government is providing the horse, and the 'horse nearest the door' is perfectly competent, the trial court may require the defendant to accept the 'horse nearest the door’ or go by foot.” Stokes, 821 F.Supp.2d at 911 n. 5.